1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11  LISA A. ZIMMERMAN,

12              Plaintiff,                    No. CIV S-06-1441 KJM

13         vs.

14  MICHAEL J. ASTRUE,[1]
    Commissioner of Social Security,
15              Defendant.                    ORDER

16  _____/

17              Plaintiff seeks judicial review of a final decision of the Commissioner of Social

18  Security ("Commissioner") denying her application for Supplemental Security Income ("SSI")

19  under Title XVI of the Social Security Act ("Act").  For the reasons that follow, the court grants

20  plaintiff's motion for summary judgment as specified herein, and denies the Commissioner's

21  cross-motion for summary judgment.

22

23

24  _____

25      [1] On February 12, 2007, Michael J. Astrue was sworn in as Commissioner of Social
    Security, replacing Jo Anne B. Barnhart, the original defendant herein. Pursuant to 42 U.S.C.
26  § 405(g) and Fed. R. Civ. P. 25(d)(1), Michael J. Astrue is substituted as the defendant in this
    action.

                                          1

I. Factual and Procedural Background

Plaintiff, born July 10, 1968, filed an application for SSI disability payments on April 29, 2002, alleging partial blindness, problems with her lower back, numbness in her right leg, and muscle and movement problems in her left shoulder.[2]  Administrative Transcript ("AT") 64, 73.  The claim was denied initially and on reconsideration, and a hearing was held before the administrative law judge ("ALJ") on August 5, 2003.  On December 5, 2003, the ALJ rendered a decision denying benefits.  AT 13.  On May 16, 2005, the Appeals Council vacated that decision and remanded the case for further proceedings and a supplemental hearing.  The Appeals Council determined plaintiff had no past relevant work, and instructed the ALJ to obtain a vocational expert to evaluate plaintiff's ability, in light of her limitations, to perform other work in the national economy.  AT 13.

The supplemental hearing was held on September 16, 2005.  AT 14.  In a decision dated March 4, 2006, the ALJ determined plaintiff was not disabled.[3]  The ALJ's decision

_____

[2]  Plaintiff previously filed an application for SSI disability payments on May 11, 1998.  That application was initially denied on June 30, 1998, and denied upon reconsideration on November 24, 1998.  Plaintiff declined to appeal that decision, rendering the reconsideration determination dated November 24, 1998, the final decision of the Commissioner with regard to that application.  AT 14.  The ALJ in this case determined that reopening of the prior claim was unwarranted under 20 C.F.R. § 416.1488, and plaintiff has not contested that finding.  AT 14.

[3]  Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq.  Supplemental Security Income ("SSI") is paid to disabled persons with low income.  42 U.S.C. § 1382 et seq.  Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment."  42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A).  A five-step sequential evaluation governs eligibility for benefits.  See 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987).  The following summarizes the sequential evaluation:

Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.

became the final decision of the Commissioner when the Appeals Council denied plaintiff's

request for review.

The ALJ found plaintiff suffers severe impairments of left eye blindness, status

post global fusion, and calcific tendinitis of the left shoulder.  AT 25.  The ALJ further found that

plaintiff's impairments did not meet or medically equal a listed impairment; plaintiff's

allegations regarding her limitations were not totally credible; and plaintiff has the residual

functional capacity to lift and/or carry ten pounds frequently and twenty pounds occasionally, can

sit, stand and/or walk for six hours in an eight-hour workday, but cannot perform work requiring

good peripheral vision or involving hazards such as machinery and heights.  Id.  Based on these

findings, and considering plaintiff's limited education and age, the ALJ concluded plaintiff has

the residual functional capacity to perform a significant range of light work.  Using Medical-

Vocational Rule 202.17 as a guide for decision-making as well as the testimony of the vocational

expert, the ALJ concluded there are a significant number of jobs in the national economy plaintiff

could perform, including cashier II, produce weigher and battery assembler.  AT 26.

Accordingly, the ALJ found plaintiff is not disabled.  Id.

Plaintiff contends the ALJ committed four errors.  Specifically, she argues the

ALJ: (1)  failed to develop the record regarding plaintiff's residual functional capacity; (2) erred

---

Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Bowen, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.

1  at step two by failing to properly evaluate plaintiff's severe impairments; (3) failed to properly

2  credit plaintiff's testimony regarding her pain and functional limitations; and (4) failed to include

3  all plaintiff's limitations in the hypothetical posed to the vocational expert.

4  II.  Standard of Review

5         The court reviews the Commissioner's decision to determine whether (1) it is

6  based on proper legal standards under 42 U.S.C. § 405(g), and (2) substantial evidence in the

7  record as a whole supports it.  Copeland v. Bowen, 861 F.2d 536, 538 (9th Cir. 1988) (citing

8  Desrosiers v. Secretary of Health and Human Services, 846 F.2d 573, 575-76 (9th Cir. 1988)).

9  Substantial evidence means more than a mere scintilla of evidence, but less than a

10  preponderance, Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996) (citing Sorensen v.

11  Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975)).  "It means such relevant evidence as a

12  reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402

13  U.S. 389, 401, 91 S. Ct. 1420 (1971) (quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S.

14  197, 229, 59 S. Ct. 206 (1938)).  The record as a whole must be considered, Howard v. Heckler,

15  782 F.2d 1484, 1487 (9th Cir. 1986), and both the evidence that supports and the evidence that

16  detracts from the ALJ's conclusion weighed.  See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir.

17  1985).  The court may not affirm the ALJ's decision simply by isolating a specific quantum of

18  supporting evidence.  Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If

19  substantial evidence supports the administrative findings, or if there is conflicting evidence

20  supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see

21  Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an

22  improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d

23  1335, 1338 (9th Cir. 1988).

24  /////

25  /////

26  /////

4

III.  <u>Analysis</u>

    A.  <u>RFC Assessment and Development of the Record</u>

       Plaintiff argues that the ALJ's residual functional capacity ("RFC") assessment is flawed on several bases, including a purported failure to develop the record.  Specifically, plaintiff argues that the ALJ erred by failing to obtain an updated consultative examination or an RFC assessment from plaintiff's treating physician.  Plaintiff also argues the ALJ erred by ignoring the opinion of plaintiff's physical therapist, and by relying on the opinion of examining physician, Dr. James L. Martin, which was rendered almost a year before plaintiff's back surgery.  Finally, plaintiff argues the ALJ failed to develop the record with regard to plaintiff's dyslexia, and that testing should have been ordered to assess the impact of that condition on her ability to work.

       The ALJ determined plaintiff retained the RFC to lift and/or carry ten pounds frequently and twenty pounds on occasion.  AT 20.  He also found she could sit, stand, and/or walk for six hours in an eight-hour workday, but was precluded from work requiring good peripheral vision or proximity to hazards such as machinery and heights.  <u>Id</u>.

       In reaching this assessment, the ALJ wrote that he "considered all medical opinions" and "all symptoms, including pain . . . ."  <u>Id</u>.  Indeed, the preclusion from work requiring good peripheral vision or proximity to hazards appears to be based on the opinion of Lori D. Kam, O.D.  The ALJ specifically discussed Dr. Kam's September 2002 evaluation of plaintiff, in which she diagnosed plaintiff with total left-eye blindness and opined that plaintiff would have difficulty with tasks requiring good depth perception.  AT 146.

       However, the basis for the ALJ's determination that plaintiff is otherwise capable of a significant range of light work is more difficult to discern.   The only other medical opinions in the record regarding plaintiff's limitations are those of two non-examining state agency physicians from July and October of 2002, and that of examining consultant Dr. James L. Martin, M.D. on July 2, 2002.  AT 135-142, 147-154, 131-134.  The agency physician's opinion from

July 30, 2002, was based on a review of plaintiff's records through that date. AT 141-142.

Likewise, the agency physician's opinion from October 22, 2002, was based on records available

through September 2002. AT 154. Both physicians opined that plaintiff had no exertional or

postural limitations. AT 148-149, 136-137. Similarly, Dr. Martin, who evaluated plaintiff on

July 2, 2002, opined that plaintiff had "no functional restrictions attributable to medical

conditions other than loss of peripheral vision." AT 134.

These opinions are in stark contrast to plaintiff's subsequent diagnosis of "grade 2

spondylolisthesis at L5-S1 and a herniated disk at L4-5," by spinal surgeon, Dr. Pasquale X.

Montesano, M.D., on April 21, 2003. AT 162. Pursuant to this diagnosis, which was based on

an MRI taken on February 6, 2003, Dr. Montesano recommended that plaintiff have an "anterior

L4-5 and L5-S1 decompression, fusion, and instrumentation, coupled with a posterior L4 to the

sacrum decompression, fusion and instrumentation." Id. Plaintiff underwent the spinal fusion

surgery on May 13 and 15, 2003. AT 159.

For several months following the surgery, plaintiff reported positive results and a

significant reduction in pain. AT 159, 157, 178. For example, on May 30, 2003, plaintiff

reported to Dr. Montesano's physician's assistant that her back and leg pain had completely gone

away. AT 159. On June 27, 2003, plaintiff told Dr. Montesano's physician's assistant that she

was "doing great" and was "better and better every day," although she reported recurrent pain a

few days per week. AT 157. From this point onward, however, plaintiff continued to complain

to her doctors about lower back pain. AT 210, 214, 209.

The last progress note from Dr. Montesano's office on April 28, 2004, reveals

some inconsistencies regarding plaintiff's complaints of pain. AT 211. Specifically, the

physician's assistant notes that in a pain questionnaire, plaintiff wrote she was continuing to

experience severe pain (8 out of 10 when most bothersome), but verbally reported she was

"feeling great," was able to walk longer distances, and denied radiation of pain in her lower

extremities. Id. The assistant reviewed new x-rays and reported that alignment of plaintiff's

lumbar spine was good, there was "good, solid fusion" and the "posterior segmental rods" were in good position.  Id.  The physician's assistant prescribed further physical therapy, and turned her care over to Dr. Forde, one of plaintiff's treating physicians, because "from a surgical point of view. . . her fusion [had] healed."  AT 212.

Despite the seeming contradiction between plaintiff's responses on the pain questionnaire and her statements to the physician's assistant, she continued to consistently report severe pain to the physicians she saw at the Sacramento Family Medical Clinic, including Dr. Forde.  AT 207, 205, 193-203.  Treatment notes through July 2005 reveal that plaintiff's physicians continued to treat her for pain and related numbness in her right leg, consistently prescribing a variety of medications, including Neurontin, Soma and Norco.  AT 193-203.  Several treatment notes contain the diagnoses of "failed back surgery" and "chronic lower back pain."  AT 203, 204, 195-198.

Indeed, significant events occurred after 2002 when the opinions of Dr. Martin and the agency physicians were rendered.  Subsequent to those opinions, plaintiff was diagnosed with a significant enough back impairment to warrant surgery, she underwent that surgery, improved initially, and then apparently regressed to a state of recurring pain.  Although the ALJ did not clarify what amount of weight he accorded the pre-surgery opinions – stating only that he "considered all medical opinions" – they are the only non-optometry related opinions in the record.  The ultimate RFC assessed by the ALJ (i.e., ability to lift ten pounds, twenty pounds occasionally, and sit/stand/walk for six hours) differs significantly from those opinions, which conclude plaintiff had no exertional limitations.  This discrepancy raises the question of which opinion the ALJ relied on to determine plaintiff's RFC.

Upon review of the medical evidence, there is no statement from any of plaintiff's physicians regarding her ability to lift, carry, sit, stand or walk, following the surgery.  The only statement in the record remotely bearing on that point is a report from plaintiff's physical therapist, Joseph Carinci, describing plaintiff's status as of May 17, 2004.  AT 205-206.

1    Mr. Carinci reported that plaintiff complained of constant lower back pain with numbness in her

2    thigh, and that her goals were to decrease pain and improve function.  AT 205.  Although

3    somewhat unclear, it appears he reported plaintiff's functional limitations as able to sit, stand and

4    walk for no more than ten minutes, and lift around ten pounds.  Id.  Plaintiff argues the ALJ erred

5    by not considering this evaluation in determining plaintiff's RFC.

6           Social Security Ruling 96-8p sets forth the policy interpretation of the

7    Commissioner for assessing residual functional capacity, or RFC.  SSR 96-8p.  Residual

8    functional capacity is what a person "can still do despite [the individual's] limitations."  20

9    C.F.R. §§ 404.1545(a), 416.945(a) (2003); see also Valencia v. Heckler, 751 F.2d 1082, 1085

10   (9th Cir. 1985) (residual functional capacity reflects current "physical and mental capabilities").

11   "The RFC assessment must be based on all of the relevant evidence in the case record, such as

12   . . . medical source statements."  SSR 96-8p (emphasis in original).  Although a physical therapist

13   is not an "acceptable medical source" as defined in 20 C.F.R. § 416.902, such reports should

14   nonetheless be considered by the ALJ.[4]  See SSR 06-03p (explaining that the opinions of "other

15   sources" such as chiropractors, therapists, etc., must be considered, although not necessarily

16   explained or credited, by the ALJ).  Contrary to plaintiff's assertion, the record shows the ALJ

17   considered the Carinci report, noting that plaintiff obtained some relief with a TENS unit and

18   found her prognosis for rehabilitation to be "fair."  AT 19.  Although it is unclear what if any

19   weight the ALJ accorded to it, there was no error in that regard.

20          However, Mr. Carinci's notes regarding plaintiff's functional limitations are the

21   only such post-surgery notes in the record.  As noted, there is no opinion from an examining or

22   treating medical source regarding plaintiff's limitations post-surgery.  The absence of such an

23   opinion is problematic in light of the ambiguities in the record.  In particular, despite the apparent

24   _____

25          [4] A physical therapist is not considered an "acceptable source" but rather an "other
     source" of information.  20 C.F.R. §§ 404.1513(a),(e) & 416.913(a), (e).  No specific guidelines
26   exist for weighing opinions from "other sources."  Accordingly, opinions from "other sources"
     are given less weight than opinions from "acceptable medical sources."

                                                    8

1   objective success of plaintiff's spinal surgery, beginning eight months after the surgery she began

2   to be treated for pain and numbness in her right thigh, and continued such treatment through the

3   date of the hearing, AT 210, 192-204, with several treatment notes diagnosing "failed back

4   surgery" and "chronic lower back pain."  AT 203-204, 195-199.

5            Disability hearings are not adversarial. See DeLorme v. Sullivan, 924 F.2d 841,

6   849 (9th Cir. 1991); see also Crane v. Shalala, 76 F.3d 251, 255 (9th Cir. 1996) (ALJ has duty to

7   develop the record even when claimant is represented).  An ALJ's duty to develop the record is

8   triggered  "when there is ambiguous evidence or when the record is inadequate to allow for

9   proper evaluation of the evidence."  Mayes v. Massanari, 276 F.3d 453, 459-460 (9th Cir. 2001);

10   see also Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001) (quoting Smolen, 80 F.3d at

11   1288).

12            Although it is the ALJ's responsibility to determine a claimant's RFC, Vertigan v.

13   Halter, 260 F.3d 1044, 1049 (9th Cir. 2001), the determination must nonetheless be based on

14   substantial evidence in the record.  Here, there were no medical opinions or treatment notes

15   regarding plaintiff's post-surgery limitations.  The evidence of plaintiff's apparent regression and

16   chronic lower back pain, together with the diagnosis of "failed back surgery," triggered the ALJ's

17   duty to inquire further regarding plaintiff's physical limitations following her surgery.  On

18   remand, the ALJ shall seek the opinion of plaintiff's treating physicians and/or a consultative

19   examiner regarding plaintiff's post-surgery limitations, if any, on her ability to perform work on a

20   sustained basis.

21            With regard to plaintiff's dyslexia, plaintiff never alleged this condition as an

22   impairment affecting her ability to work, and there is little mention of this condition in the

23   record.  In a "report of contact" from July 31, 2002, a claims representative notes plaintiff

24   reported attending special education classes because of dyslexia.  AT 93.  The notation queries

25   whether further follow-up is appropriate, but remarks that plaintiff reported her physical

26   conditions were what prevents her from working.  Id.  The agency representative who took

1   plaintiff's application noted she had some difficulty with the form, but otherwise reported no

2   difficulty with reading and writing.  AT 70.  Other than these notations, plaintiff made no

3   mention of dyslexia in any of her applications, or at her first hearing.  See, e.g., AT 73, 217-244.

4   At the second, supplemental hearing, plaintiff testified she was dyslexic and read things

5   backwards, but that she "can read all right."  AT 268.  In the past, plaintiff was able to perform

6   jobs, such as cashier, and that she quit because she became pregnant, not because of difficulties

7   from her dyslexia.  AT 86, 73.

8           Plaintiff has presented no evidence showing her alleged dyslexia affects her ability

9   to work, and raises this issue for the first time before this court, claiming the ALJ should have

10  obtained psychological testing to explore the breadth of this condition and whether it affected her

11  ability to work.  20 C.F.R. § 416.912 (plaintiff bears the burden of providing evidence showing a

12  disabling impairment).  Generally, to trigger the ALJ's duty in this regard, there must be some

13  objective evidence suggesting a condition that could have a material impact on the disability

14  decision.  See Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir.1996); Wainwright v. Secretary of

15  Health and Human Services, 939 F.2d 680, 682 (9th Cir.1991).  Here, the ALJ noted plaintiff's

16  special education and purported dyslexia, but did not otherwise comment on it.  AT 21.  As

17  discussed above, there was little evidence with regard to plaintiff's dyslexia, and that evidence

18  tended to show that it had no bearing on plaintiff's ability to work in some capacity.  Plaintiff did

19  not list dyslexia as an impairment, and she told the ALJ she could read "all right."  Also,

20  plaintiff's attorney did not include dyslexia as a limitation in the hypothetical he posed to the

21  vocational expert at the second hearing.  AT 274.  The ALJ did not err by failing to obtain

22  psychological testing relative to plaintiff's dyslexia.

23       B.  Step Two Determination

24          Plaintiff argues the ALJ erred at step two of the sequential evaluation by finding

25  her only severe impairments were left eye blindness, "status post global fusion," and calcific

26  tendinitis of the left shoulder.  Plaintiff argues the ALJ should have found plaintiff also had the

10

1  following severe impairments: degenerative back disease, chronic lower back pain with lower

2  extremity neuropathy, headaches and obesity.

3     An impairment is not severe if it "would have no more than a minimal effect on

4  an individual's ability to work, even if the individual's age, education, or work experience were

5  specifically considered." SSR 85-28. The purpose of step two is to identify claimants whose

6  medical impairment is so slight it is unlikely they would be disabled even if age, education, and

7  experience were taken into account. Bowen v. Yuckert, 482 U.S. 137, 107 S. Ct. 2287 (1987).

8  "The step-two inquiry is a de minimis screening device to dispose of groundless claims."

9  Smolen v. Chater 80 F.3d 1273, 1290 (9th Cir. 1996). The burden is on plaintiff at step two of

10  the sequential evaluation. See Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1998).

11     Plaintiff argues the ALJ failed to properly assess the impact of plaintiff's obesity

12  on her ability to work. Social Security Ruling 02-01p sets forth guidelines for consideration of a

13  claimant's obesity in the sequential evaluation.[5] The threshold question in this analysis is

14  whether a claimant's obesity is a medically determinable impairment. SSR 02-01p. Generally,

15  the Commissioner will accept a diagnosis of obesity given by a treating source or by a

16  consultative examiner. Id. The next inquiry is whether a claimant's obesity is severe – that is,

17  whether it alone, or in combination with another medically determinable physical or mental

18  impairments, significantly limits her physical or mental ability to do basic work activities. Id.;

19  Burch v. Barnhart, 400 F.3d 676, 682 (9th Cir. 2005).

20     Here, plaintiff never alleged her obesity was a medically determinable impairment

21  or otherwise affected her ability to work. Some treatment notes describe plaintiff as obese, but

22  do not otherwise comment on whether it limits her ability to work. For example, on December

23

24    [5] "The Secretary issues Social Security Rulings to clarify the Secretary's regulations and
policy." Bunnell v. Sullivan, 947 F.2d 341, 346 n.3 (9th Cir. 1991). Although they do not have

25  the force of law, the rulings represent the Secretary's interpretation of its regulations. Id. The
court therefore gives them deference unless they are inconsistent with the statute or regulations.

26  Id.

13, 2002, plaintiff's treating physician noted that plaintiff is a "well-developed, moderately obese . . . female with grossly normal gait and trunk function."  AT 180.  These treatment notes do not indicate plaintiff's exact weight, nor do they reflect any limitations imposed by plaintiff's weight. The only records expressing concern about plaintiff's weight are in the context of preparation for surgery.  Although spinal surgeon Dr. Montesano instructed plaintiff to lose weight before considering surgery, the record shows her weight loss was not sufficient to alleviate her back problems, and a two-day spinal fusion ultimately was performed.  AT 166, 167, 163-164.  In reviewing the medical history, the ALJ did note that plaintiff's weight fluctuated, dropping to about 175 pounds soon after her surgery in June 2003, and rising back to above 200 pounds afterwards.  AT 18, 19, 22, 157, 211, 201.  He did not otherwise comment on whether plaintiff's obesity affected her ability to work.

Plaintiff never alleged, at the hearing or in any of her paperwork, that her obesity was a medically determinable impairment, that it affected her ability to do basic work activities, or exacerbated any of her other symptoms.  Burch, 400 F.3d at 682 (finding ALJ did not err by not considering claimant's obesity at step two where there was no evidence it exacerbated her other impairments).  The record shows that even after substantial weight loss, plaintiff's back condition did not improve and still required surgery.  The burden was on plaintiff to allege and demonstrate her obesity was severe and affected her ability to perform basic work activities. Ukolov v. Barnhart, 420 F.3d 1002, 1004 (9th Cir. 2005) ("The claimant carries the initial burden of proving a disability.").  Plaintiff has not met her burden, and the record does not support a conclusion in her favor.  Accordingly, the ALJ did not err by failing to find that plaintiff's obesity was severe.

With regard to plaintiff's headaches, the ALJ concluded that plaintiff's "allegation of headaches is not a medically determinable impairment."  AT 16.  The ALJ found the record did not show plaintiff's headaches occurred at a frequency, severity or intensity to prevent her from performing regular and sustained work activities.  Id.  The record supports this finding.

Few treatment notes reveal complaints about headaches, and the majority of those reported appear to be related to allergies and a sinus infection.  AT 201, 202, 207, 210.  Moreover, in September and October 2004, plaintiff reported some relief with Motrin and Augmentin.[6] AT 200, 201.  Plaintiff's complaint of migraines is unsupported by any medical evidence, and there is no evidence showing plaintiff's headaches constitute a severe impairment affecting her ability to perform basic work activities on a sustained basis.

Finally, plaintiff argues the ALJ failed to find that her degenerative back disease with chronic lower back pain and lower extremity neuropathy was severe.  Plaintiff argues the ALJ's finding that plaintiff had the severe impairment of "status post L4-SI global fusion" implies that plaintiff's back problem was "fixed by surgery."  Although it is not entirely clear what the ALJ's "status post L4-SI global fusion" finding means, it does seem to encompass all of plaintiff's back troubles.  The ALJ discussed in depth plaintiff's history of back pain, her surgical treatment, and her post-operative complaints of pain and numbness in her lower extremities. AT 16-19.  Although the treatment notes of plaintiff's physicians reveal diagnoses of failed lumbar surgery, chronic lower back pain, and degenerative disc disease, the ALJ's mere recitation of a medical diagnosis does not demonstrate how that condition impacts plaintiff's ability to engage in basic work activities.  Put another way, a medical diagnosis does not an impairment make.  Despite being awkwardly worded, the ALJ's finding of severe "status post L4-SI global fusion" adequately encompasses plaintiff's symptoms and the diagnoses of her physicians. Accordingly, the ALJ committed no error at step two of the sequential evaluation.

C.   Credibility

Next, plaintiff argues the ALJ erred by failing to credit plaintiff's testimony regarding the nature and extent of her limitations.  The ALJ determines whether a disability applicant is credible, and the court defers to the ALJ's discretion if the ALJ used the proper

---

[6] Augmentin is an antibiotic.  See Physicians' Desk Reference, 1360 (61st ed. 2007).

13

1  process and provided proper reasons.  See, e.g., Saelee v. Chater, 94 F.3d 520, 522 (9th Cir.

2  1995).  If credibility is critical, the ALJ must make an explicit credibility finding.  Albalos v.

3  Sullivan, 907 F.2d 871, 873-74 (9th Cir. 1990); Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th

4  Cir. 1990) (requiring explicit credibility finding to be supported by "a specific, cogent reason for

5  the disbelief").

6          In evaluating whether subjective complaints are credible, the ALJ should first

7  consider objective medical evidence and then consider other factors.  Bunnell v. Sullivan,

8  947 F.2d 341, 344 (9th Cir. 1991) (en banc).  If there is objective medical evidence of an

9  impairment, the ALJ then may consider the nature of the symptoms alleged, including

10  aggravating factors, medication, treatment and functional restrictions.  See id. at 345-47.  The

11  ALJ also may consider: (1) the applicant's reputation for truthfulness, prior inconsistent

12  statements or other inconsistent testimony, (2) unexplained or inadequately explained failure to

13  seek treatment or to follow a prescribed course of treatment, and (3) the applicant's daily

14  activities.  Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996); see generally SSR 96-7P, 61

15  FR 34483-01; SSR 95-5P, 60 FR 55406-01; SSR 88-13.  Work records, physician and third party

16  testimony about nature, severity and effect of symptoms, and inconsistencies between testimony

17  and conduct also may be relevant.  Light v. Social Security Administration, 119 F.3d 789, 792

18  (9th Cir. 1997).  A failure to seek treatment for an allegedly debilitating medical problem may be

19  a valid consideration by the ALJ in determining whether the alleged associated pain is not a

20  significant nonexertional impairment.  See Flaten v. Secretary of HHS, 44 F.3d 1453, 1464 (9th

21  Cir. 1995).  The ALJ may rely, in part, on his or her own observations, see Quang Van Han v.

22  Bowen, 882 F.2d 1453, 1458 (9th Cir. 1989), which cannot substitute for medical diagnosis.

23  Marcia v. Sullivan, 900 F.2d 172, 177 n.6 (9th Cir. 1990).  "Without affirmative evidence

24  showing that the claimant is malingering, the Commissioner's reasons for rejecting the

25  claimant's testimony must be clear and convincing."  Morgan v. Commissioner of Social Sec.

26  Admin., 169 F.3d 595, 599 (9th Cir. 1999).

Here, plaintiff testified she only was able to sit for five to ten minutes in a normal position before she had to get up and walk around, but that she could only walk around for about fifteen minutes.  She further testified she could not stand still.  AT 265-267.  The ALJ found these allegations of totally disabling symptoms to be inconsistent with the record as a whole.  In particular, he commented that,

> [i]n contrast to her testimony regarding extreme limitations, post-surgical treatment records do not reflect any complaint of worsening pain, numbness, or decreased functional ability.  It is also noted that the claimant's description of her functional abilities is dramatically more limited than she reported prior to her surgery. . . . It is reasonable to expect that if an individual experiences significant deterioration particularly after treatment such as surgery, that such problems would be reported to the treating physicians, yet post-surgical treatment records show that the claimant reported that her back and leg pain had completely resolved and she experienced only occasional mild discomfort in her legs.

AT 20.

Although the ALJ is correct that plaintiff initially reported dramatic improvement following surgery, as noted above, several months later she began seeing her treating physicians with complaints of pain in her lower back and numbness in her lower right extremity, and treatment notes included diagnoses of failed back surgery and chronic lower back pain.  AT 192-203.  The ALJ's mischaracterization of this record cannot serve as a "clear and convincing" reason for discrediting plaintiff.

The ALJ's other reasons for discrediting plaintiff likewise are neither clear nor convincing.  For example, the ALJ noted that examining physician Dr. Martin found plaintiff's cooperation to be "submaximal with grimacing and pain vocalization not noted casually," suggesting some exaggeration of symptoms.  AT 21, 132.  However, as discussed above, Dr. Martin's report and finding that plaintiff had "no restrictions attributable to medical conditions" was superseded by plaintiff's subsequent medical treatment.  The ALJ also pointed to inconsistencies between plaintiff's previous testimony that she had worked as a waitress and her later testimony that she had not been a waitress, but rather a cashier, at Carl's Jr.  AT 21.  In fact,

15

1  the record shows plaintiff had previously characterized her job at Carl's Jr. (perhaps inaccurately,

2  but not inconsistently), as that of "waitress." AT 74, 85-87.  This slight inaccuracy is not a

3  sufficient reason for discrediting plaintiff.

4          The ALJ also cited inconsistencies in plaintiff's statements regarding her efforts to

5  stop smoking, and her apparent failure to succeed in that goal despite medical advice that she do

6  so.  AT 21.  Although plaintiff unsuccessfully attempted to quit smoking, that failure does not

7  bear on the severity of her back pain and other symptoms.  Rather, plaintiff was advised to quit

8  smoking in order to help expedite the fusion process.  AT 160.  Regardless of whether she

9  stopped smoking or not, treatment notes from her last visit to Dr. Montesano's office show that

10  "a good, solid fusion" had occurred.  AT 211.  In fact, the surgery was deemed a success, and she

11  was discharged from Dr. Montesano's care.

12          However, the ALJ also found plaintiff less than credible based on her decision to

13  stop physical therapy and other inconsistencies in her statements regarding her ability to drive.

14  AT 21.  As the ALJ noted, plaintiff declined to continue physical therapy in April 2005, despite

15  continued complaints of severe pain, and a positive prognosis from her physical therapist.

16  AT 22, 194, 205-206.  Plaintiff testified she discontinued physical therapy because "it didn't

17  work" and because despite her efforts, the "pain [did] not go away."  AT 260.  Notably, in May

18  2005, plaintiff reported to a physician at the Sacramento Family Medical Clinic that she would

19  like to be seen every two months, as opposed to every month, and despite continuing back pain,

20  reported that she had no desire for surgery or further aggressive treatment.  AT 193.  Given

21  plaintiff's previous success with physical therapy, AT 177-178, the ALJ found her failure to

22  continue with this treatment probative of plaintiff's credibility.  This is a permissible basis for

23  finding a claimant's testimony about disabling symptoms less than fully credible.  Fair v. Bowen,

24  885 F.2d 597, 603 (9th Cir. 1989).  As discussed above, although the record shows plaintiff

25  continually sought treatment for pain after her surgery, there is some evidence the pain was

26  managed with medication and a TENS unit, which undermines plaintiff's contentions that she

1   can sit for no more than five minutes and cannot stand still.

2          The ALJ also noted inconsistencies in plaintiff's testimony.  AT 22.  For example,

3   plaintiff testified at the second hearing that she does not drive due to numbness in her leg.  AT

4   262.  However, she went on to testify that she actually never had a license.  AT 263.  Such

5   inconsistencies in a claimant's testimony support an adverse credibility finding.  Fair, 885 F.2d at

6   604 n.5;  Smolen, 80 F.3d at 1284 (approving of ordinary techniques of credibility evaluation,

7   such as inconsistent statements in determining credibility).   In sum, the ALJ articulated a wealth

8   of reasons for discrediting plaintiff's allegation of totally disabling symptoms.  Although some of

9   those reasons were less than convincing, the overall determination was based on permissible

10  grounds and will not be disturbed.

11          D.  Hypothetical

12          Finally, plaintiff contends the hypothetical posed to the vocational expert failed to

13  include all of plaintiff's limitations.  Hypothetical questions posed to a vocational expert must set

14  out all the substantial, supported limitations and restrictions of the particular claimant.

15  Magallanes v. Bowen, 881 F.2d 747, 756 (9th Cir. 1989).  If a hypothetical does not reflect all

16  the claimant's limitations, the expert's testimony as to jobs in the national economy the claimant

17  can perform has no evidentiary value.  DeLorme v. Sullivan, 924 F.2d 841, 850 (9th Cir. 1991).

18  While the ALJ may pose to the expert a range of hypothetical questions, based on alternate

19  interpretations of the evidence, the hypothetical that ultimately serves as the basis for the ALJ's

20  determination must be supported by substantial evidence in the record as a whole.  Embrey v.

21  Bowen, 849 F.2d 418, 422-23 (9th Cir. 1988).

22          Because the ALJ's assessment of plaintiff's residual functional capacity is flawed,

23  as discussed above, the hypothetical he relied on has no evidentiary value.  Accordingly, upon

24  reevaluation of plaintiff's residual functional capacity, the ALJ shall obtain the testimony of a

25  vocational expert based on all of plaintiff's substantial and supported limitations.

26  /////

In accordance with the foregoing, IT IS HEREBY ORDERED that:

1.  Plaintiff's motion for summary judgment is granted in part;

2.  The Commissioner's cross-motion for summary judgment is denied in part; and,

3.  This matter is remanded for further proceedings consistent with this order.

DATED:  September 28, 2007.

_____
U.S. MAGISTRATE JUDGE

mb
Zimmerman.ss